**SETTLEMENT AGREEMENT AND GENERAL RELEASE**

Paulette Robinson-Morrison (hereinafter, "Robinson-Morrison") and Haven Developmental Care, Inc. and Carol Trim Bagot ( collectively "Company") (Robinson-Morrison and Company may be collectively referred to herein as the "Parties" or individually as a "Party") hereby agree upon a settlement of all issues involved herein, and as described in this Settlement Agreement and General Release ("Agreement"), this 23rd day of December, 2016 ("Effective Date"), as follows:

**RECITALS**

**WHEREAS**, Robinson-Morrison is a Party to that certain civil action filed, *Robinson-Morrison et al. v. Haven Developmental Care, Inc. et al.*, civil action number 1:16-cv-02151-SCJ ("Complaint"), in which she alleged that the Company violated the Fair Labor Standards Act ("FLSA") by failing to pay her wages and overtime for hours she worked for the Company (the "Wage Claim"). Robinson-Morrison also alleged that she was entitled to liquidated damages equal to the amount of unpaid wages (the "Liquidated Damages Claim");

**WHEREAS**, the Company denies the allegations asserted by Robinson-Morrison as set forth in the Complaint. The Company believes that Robinson-Morrison was properly compensated and, therefore, that Robinson-Morrison is not entitled to overtime pay. The Company further believes that it acted in good faith and, therefore, that Robinson-Morrison is not entitled to liquidated damages;

**WHEREAS**, by this Agreement, the Parties desire to settle, fully and finally, the claims that could arise under the FLSA; and

**WHEREAS**, the Parties have also separately negotiated and reached an agreement on a general release of claims.

**NOW, THEREFORE**, in consideration of the foregoing recitals and the mutual terms, covenants, and conditions hereinafter set forth, the Parties agree as follows:

1. **Settlement Amount for FLSA Claim**. As consideration for Robinson-Morrison's release of her FLSA claim, the Company will pay Robinson-Morrison and her attorneys the gross sum of $4,807 (the "Settlement Amount"). The FLSA Settlement Amount is being paid in settlement for Robinson-Morrison's Overtime, Liquidated Damages and her attorney's fees and costs.

The Parties agree that the FLSA Settlement Amount will be paid as follows:

a. The Company will pay Robinson-Morrison the gross amount of $617 as full compensation for Robinson-Morrison's Overtime claim. All necessary deductions and withholdings will be made from this payment, and this amount will be reported on a Form w-2 issued to Robinson-Morrison.

b.  The Company will pay Robinson-Morrison the gross amount of $617 as full compensation for Robinson-Morrison's Liquidated Damages Claim. No withholdings will be made from this payment, and this amount will be reported on a Form 1099 issued to Robinson-Morrison.

c.  The Company will pay the Vaughn Law Firm, LLC the gross amount of $3,573 for attorney's fees. No deductions or withholdings will be made from this payment, and this amount will be reported on a Form 1099 issued to the Vaughn Law Firm, LLC.

The consideration set forth above is in full and complete settlement of Robinson-Morrison's claims under the FLSA as alleged in the Complaint. Robinson-Morrison 1(a) and 1(b) of FLSA Settlement Amount shall be due and payable to Robinson-Morrison. Section 1(c) of FLSA Settlement Amount shall be due and payable to the Vaughn Law Firm, LLC. The FLSA Settlement amount shall be provided to the Vaughn Law Firm, LLC in accordance with the payment schedule set forth in Section 4 of this Agreement. Robinson-Morrison and her counsel agree not to seek any additional attorneys' fees, costs or expenses from the Company in connection with the matters alleged in the Complaint or could have been alleged in a complaint.

**2.    Release of Claims under the FLSA by Robinson-Morrison.** In consideration of the FLSA Settlement Amount described in Paragraph 1 of this Agreement, Robinson-Morrison releases and discharges the Company from any liability for claims and damages allegedly arising under the FLSA, including the Overtime Claim and the Liquidated Damages Claim. Contemporaneously with the full execution of this Agreement, the Parties shall submit a joint motion seeking the Court's approval of this Agreement and the dismissal of the Complaint with prejudice.

**3.    Settlement Amount for General Release and Limited Confidentiality.** As consideration for Robinson-Morrison's general release of claims against the Company in Section 6 of this Agreement, the Company will pay Robinson-Morrison the gross sum of $500 (the "General Release Settlement Amount"). No withholdings will be made from this payment, and this amount will be reported on a Form 1099 issued to Robinson-Morrison.

The consideration set forth above is in full and complete settlement of Robinson-Morrison's general release of claims against the Company and confidentiality terms. The General Release Settlement Amount shall be due and payable to the Vaughn Law Firm in accordance with the payment schedule set forth in Section 4 of this Agreement.

**4. Payment Schedule.** The FLSA Settlement Amount and the General Release Settlement Amount will be paid as follows:

a.  Within five (5) days of the Court's approval of the joint motion for approval of settlement agreement but in no case will the first payments become late prior to January 6, 2017, the Company will make payment in the amount of $216.75 for a portion of the sum set forth in Section 3 and $696.62 for a portion of the sum set forth in Section 1(c);

b. Within thirty (30) days of the Court's approval of the joint motion for approval of settlement agreement, the Company will make payment in the amount $308.50 in the gross amount for a portion of the sum set forth in Section 1(a), $125 for a portion of the sums set forth in Section 3 and Section 1(b), and $393.25 for a portion of the sum set forth in Section 1(c);

c. Within sixty (60) days of the Court's approval of the joint motion for approval of settlement agreement, the Company will make payment in the amount $216.75 for a portion of the sum set forth in Section 3 and Section 1(b) and $696.62 for the portion of the sum set forth in Section 1(c);

d. Within ninety (90) days of the Court's approval of the joint motion for approval of settlement agreement, the Company will make payment in the amount $216.75 for a portion of the sum set forth in Section 1(b) and $696.62 for the portion of the sum set forth in Section 1(c);

e. Within one hundred twenty (120) days of the Court's approval of the joint motion for approval of settlement agreement, the Company will make payment in the amount $216.75 for a portion of the sum set forth in Section 1(b) and $696.62 for the portion of the sum set forth in Section 1(c); and

f. Within one hundred fifty (150) days of the Court's approval of the joint motion for approval of settlement agreement, the Company will make payment in the amount $308.50 in the gross amount for a portion of the sum set forth in Section 1(a), $125 for a portion of the sums set forth in Section 1(b), and $393.25 for a portion of the sum set forth in Section 1(c).

**5.     Tax Liability.**   In paying the amount specified in Section 1 or Section 3, Company make no representation regarding the tax consequences or liability arising from said payments. Robinson-Morrison understands and agrees that any and all tax liability that may be due or become due because of the payments referenced above is her sole responsibility, and that she will pay any such taxes that may be due or become due. Robinson-Morrison agrees to bear all tax consequences, if any, attendant upon the payment to her of the FLSA Settlement Amount and the General Release Settlement Amount.  Robinson-Morrison further agrees to hold Company harmless from and against all valid tax or tax withholding claims, amounts, interest, penalties, fines or assessments finally determined to be valid by any taxing authority or governmental agency with regard to the FLSA Settlement Amount and the General Release Settlement Amount. In the event Company receive written notice that any claim or assessments for taxes, withholding obligations, penalties and/or interest arising out of this settlement are being or will be made against Company, Company shall promptly, after receipt of such written notice, notify Robinson-Morrison by letter sent to counsel for Robinson-Morrison.

**6.     General Release by Robinson-Morrison.**  Except for any claim related to the non-payment of payroll taxes by the Company, in consideration of the General Release Settlement Amount described in Section 3 of this Agreement, Robinson-Morrison (for herself, her agents, assigns, heirs, executors, and administrators) releases and discharges the Company (including its officers, principals, members, employees, agents, representatives, attorneys, or officers) from any

and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, and expenses (including attorney fees and costs actually incurred), of any nature whatsoever, known or unknown, in law or equity which arose at any time from the beginning of time to the date Robinson-Morrison executes this Agreement.  Without limiting the foregoing general release, Robinson-Morrison understands that this general release applies, but is not limited, to: all claims arising out of Robinson-Morrison's employment relationship with the Company, the cessation of that employment, the compensation or benefits payable in connection with that employment or the cessation of that employment and/or any other interaction with Company, including, without limitation, (a) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), et seq.; (b) The Americans With Disabilities Act of 1990, as amended, 42 U.S.C. § 12101et seq.; (c) The Equal Pay Act, as amended, 29 U.S.C. § 206, et seq; (d) The Lilly Ledbetter Fair Pay Act of 2009; (e) The Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601, et seq.; (f) The National Labor Relations Act, 29 U.S.C. § 151, et seq.; (g) The Employee Retirement Income Security Act, as amended, 29 U.S.C. § 1001 et seq.; (h) The Fair Credit Reporting Act, as amended, 15 U.S.C. § 1681 et seq.; (i) The Civil Rights Act of 1866, 42 U.S.C. § 1981 et seq.; (j) The Fair Labor Standards Act, as amended, 29 U.S.C. § 201, et seq. (the "FLSA"); (k) The Occupational Safety and Health Act, as amended, 29 U.S.C. § 651, et seq. (l) any agreement, representation, promise, understanding, policy, practice, plan, or potential entitlement (regardless of the source); (m) past or future wages, severance, compensation, vacation pay, holiday pay, meal or rest breaks, overtime, benefits, bonuses, commissions, fringe benefits, reimbursement of expenses, or other forms of consideration, payment, or remuneration, except for claims to enforce payment of those sums explicitly identified in Section 3; (n) breach of contract; (o) intentional and/or negligent infliction of emotional distress; and (p) any other federal, state, or local law, whether arising or emanating from statute, executive order, regulation, code, common law, or other source, including, but not limited to, all actions sounding in tort, contract, and/or any doctrine of good faith and fair dealing.

Robinson-Morrison further waives any and all rights to participate in a class or collective action alleging violations of any of the above laws, including those brought under the FLSA, and Robinson-Morrison further covenants and agrees not to accept, recover or receive any back pay, front pay, liquidated damages, other damages or any form of relief based upon any claims that have been asserted or could have been asserted or settled in a lawsuit that may arise out of, or in connection with, any other individual, class or administrative remedies pursued by any state or local governmental agency against Company.  Finally, the above release excludes any other claim which cannot be released by private agreement.

This Agreement shall not apply to any provision of this Agreement that may be interpreted to waive, release, or extinguish any rights that, by express and unequivocal terms of law, may not under any circumstances be waived, released, or extinguished.

**7. General Release by Company.**  In consideration of the releases, promises and covenants provided for herein, the Company (for itself, its agents, assigns, successors, heirs, executors, and administrators) releases and discharges Robinson-Morrison from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, and expenses (including attorney fees and costs actually incurred), of any nature whatsoever, known or unknown, in law or

equity which arose at any time from the beginning of time to the date Robinson-Morrison executes this Agreement, including but not limited those growing out of, resulting from, or connected in any way to Robinson-Morrison's relationship and/or employment, and the termination thereof, with Company.  Without limiting the foregoing general release, this includes, but is not limited to, all claims based on constitutional, statutory, common law, or regulatory grounds, including but not limited to conversion, intentional infliction of emotional distress, negligence, breach of contract or implied covenant, deprivation of equity interest, shareholder rights, conversion, defamation, retaliation, fraud, misrepresentation, or promissory estoppel.  This includes all claims for any relief, no matter how denominated, including, but not limited to compensatory damages, punitive damages, and attorneys' fees and costs.

**8. Non-disparagement.**  Each Party agrees not to make any oral or written statements or reveal any information to any person, about the other Party which disparages or damages the the other Party's reputation or business. The Company agrees that if asked for a reference by any prospective employer and/or current employer of Robinson-Morrison, the Company will respond by only providing the dates of employment, last position held and rate of compensation.

**9**.  **Representations, Warranties and Affirmations.**  Robinson-Morrison represents, warrants and affirms that she has no suits, claims, charges, complaints or demands of any kind whatsoever currently pending against Company with any local, state, or federal court or any governmental, administrative, investigative, civil rights or other agency or board.  Robinson-Morrison represents, affirms and warrants that she has not filed any charge, complaint or action against Company with OSHA, the EEOC, the NLRB or any other Federal, State or local agency or board.  This representation, affirmation, and warranty is a material inducement for Company to enter into this Agreement.  In addition to all other rights and remedies Company may have at law or in equity, if Robinson-Morrison's representation, affirmation, and warranty is false, Robinson-Morrison will return to Company all consideration paid pursuant to Section 3 of this Agreement.  Robinson-Morrison further represents and affirms as a material term of this Agreement that she has been paid and/or received all leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits to which she may be entitled and that no other leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits are due to her, except as provided for in this Agreement.

**10.     Disclaimer of Liability.**  Nothing in this Agreement shall constitute or be construed as an admission of liability or wrongdoing by the either Party.  Each Party expressly denies that it has done anything wrong or unlawful.

**11.     Remedies for Breach.**  Should any Party prevail in any action brought against the other to enforce the terms of this Agreement, or to recover damages for breach of this Agreement, or to collect the FLSA Settlement Amount or the General Release Settlement Amount to be paid by Company under this Agreement, the prevailing Party shall be entitled to recover from the other her or its reasonable attorneys' fees incurred in the action, along with costs and damages.

**12.     Integration**.  This written Agreement contains the entire agreement of the parties regarding the settlement of Robinson-Morrison's claims under the FLSA and the Parties' general release of claims.  This Agreement may not be changed orally but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification, extension, or

discharge is sought. The Parties acknowledge that each Party has not relied upon any representations or promises except as set forth herein and has not relied upon the other Party or its counsel for any advice on or interpretation of the legal or tax implications of this Agreement. By signing below, the Parties acknowledge receipt of a copy of this Agreement. Each Party has been advised to seek the advice of a Certified Public Accountant or other tax advisor to insure and review the Agreement and to advise each Party concerning how all of the terms and conditions set forth therein may affect their future tax liabilities. The Parties hereto hereby acknowledge and agree that each has had the opportunity to retain its, his or her own Certified Public Accountants, tax advisor or tax attorney with reference to the tax implications of this Agreement. Further, the Parties hereby acknowledge that they have not relied upon the tax implications of this Agreement. Further, the Parties acknowledge and agree that their signatures to this Agreement serve as the acknowledgment that they have read this particular paragraph and that they have had the opportunity to seek independent advice. All Parties acknowledge that its, his or her attorney provided them no tax advice and they have not relied on any representations of their lawyer in providing tax advice.

      **13.**    **Severability.**  Should any clause of this Agreement be found void by a court of law, with the exception of the requirement that the Company pay Robinson-Morrison and her counsel the Settlement Amount set forth in Section 1 and the General Release Settlement Amount set forth in Section 3, that fact shall not impair the remainder of this Agreement.

      **14.**    **Governing Law.**  This Agreement shall be interpreted and enforced in accordance with the laws of the State of Georgia. The parties agree to and hereby do submit to jurisdiction before any state or federal court of record in Fulton County, Georgia, subject to the right, if any, of either party to attempt to remove any claim arising under this Agreement to a United States District Court if said Court has jurisdiction.

      **15.**    **Construction of Agreement.**  The Parties hereby confirm and agree that this Agreement is the result of negotiation and compromise and that in interpreting this Agreement neither party shall be considered to be the drafter of the document, and that the language should not be strictly construed against either party. Instead, the language of the Agreement should be interpreted in a manner consistent with the ordinary and reasonable meaning of the words used.

      **16.**    **Binding Effect.**  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, executors, administrators, officers, directors, shareholders, employees, agents, parent companies, subsidiaries, divisions, affiliates, related companies, successors, and assigns.

      **17.**    **Expenses.**  The Parties shall pay their own expenses, including, without limitation, any attorney fees, mediation fees, court costs, pleading preparation, legal and expert fees, or other expenses incurred for the negotiation, preparation, and execution of this Agreement, with the exception of the payment of the FLSA Settlement Amount and the General Release Settlement Amount by the Company to Robinson-Morrison and her counsel referenced in Paragraphs 1.

      **18.**    **Counterparts.**  This Agreement may be executed in identical counterparts, each of which shall constitute an original of this Agreement. Signatures of the Parties may be exchanged by facsimile or electronically (e.g. Pdf) and same shall be treated as an original.

19. **Understanding and Voluntariness.** EACH PARTY REPRESENTS AND AGREES THAT THE PARTY HAS DISCUSSED ALL ASPECTS OF THIS AGREEMENT WITH THE PARTY'S COUNSEL, THE PARTY HAS CAREFULLY READ AND FULLY UNDERSTANDS ALL OF THE PROVISIONS OF THIS AGREEMENT, AND THAT THE PARTY IS VOLUNTARILY ENTERING INTO THIS AGREEMENT.

**IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement to be executed by their duly authorized representatives, and have executed and delivered this Agreement, as an agreement under seal, effective as of the date first written below ("Effective Date").

Paulette Robinson-Morrison

_____
Signature

Dated: 12/13/16

Haven Developmental Care, Inc.

_____
Signature

By: _____
Title: Director

Dated: 12/23/16

Carol Trim Bagot

_____
Signature

Dated: 12/23/16

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

Stephanie Armstead (hereinafter, "Armstead") and Haven Developmental Care, Inc. and Carol Trim Bagot ( collectively "Company") (Armstead and Company may be collectively referred to herein as the "Parties" or individually as a "Party") hereby agree upon a settlement of all issues involved herein, and as described in this Settlement Agreement and General Release ("Agreement"), this 23rd day of December, 2016 ("Effective Date"), as follows:

## RECITALS

**WHEREAS**, Armstead is a Party to that certain civil action filed, *Armstead et al. v. Haven Developmental Care, Inc. et al.*, civil action number 1:16-cv-02151-SCJ ("Complaint"), in which she alleged that the Company violated the Fair Labor Standards Act ("FLSA") by failing to pay her wages and overtime for hours she worked for the Company (the "Wage Claim"). Armstead also alleged that she was entitled to liquidated damages equal to the amount of unpaid wages (the "Liquidated Damages Claim");

**WHEREAS**, the Company denies the allegations asserted by Armstead as set forth in the Complaint. The Company believes that Armstead was properly compensated and, therefore, that Armstead is not entitled to overtime pay. The Company further believes that it acted in good faith and, therefore, that Armstead is not entitled to liquidated damages;

**WHEREAS**, by this Agreement, the Parties desire to settle, fully and finally, the claims that could arise under the FLSA; and

**WHEREAS**, the Parties have also separately negotiated and reached an agreement on a general release of claims.

**NOW, THEREFORE**, in consideration of the foregoing recitals and the mutual terms, covenants, and conditions hereinafter set forth, the Parties agree as follows:

1. **Settlement Amount for FLSA Claim**. As consideration for Armstead's release of her FLSA claim, the Company will pay Armstead and her attorneys the gross sum of $6,193 (the "Settlement Amount"). The FLSA Settlement Amount is being paid in settlement for Armstead's Overtime, Liquidated Damages, and her attorney's fees and costs.

The Parties agree that the FLSA Settlement Amount will be paid as follows:

a. The Company will pay Armstead the gross amount of $1,310 as full compensation for Armstead's Overtime claim. All necessary deductions and withholdings will be made from this payment, and this amount will be reported on a Form w-2 issued to Armstead.

b. The Company will pay Armstead the gross amount of $1,310 as full compensation for Armstead's Liquidated Damages Claim. No withholdings will be made from this payment, and this amount will be reported on a Form 1099 issued to Armstead.

      c.      The Company will pay the Vaughn Law Firm, LLC the gross amount of $3,573 for attorney's fees.  No deductions or withholdings will be made from this payment, and this amount will be reported on a Form 1099 issued to the Vaughn Law Firm, LLC.

The consideration set forth above is in full and complete settlement of Armstead's claims under the FLSA as alleged in the Complaint.  Section 1(a) and 1(b) of FLSA Settlement Amount shall be due and payable to Armstead.  Section 1(c) of FLSA Settlement Amount shall be due and payable to the Vaughn Law Firm, LLC.  The FLSA Settlement amount shall be provided to the Vaughn Law Firm, LLC in accordance with the payment schedule set forth in Section 4 of this Agreement.  Armstead and her counsel agree not to seek any additional attorneys' fees, costs or expenses from the Company in connection with the matters alleged in the Complaint or could have been alleged in a complaint.

      **2.**      **Release of Claims under the FLSA by Armstead.**  In consideration of the FLSA Settlement Amount described in Paragraph 1 of this Agreement, Armstead releases and discharges the Company from any liability for claims and damages allegedly arising under the FLSA, including the Overtime Claim and the Liquidated Damages Claim.  Contemporaneously with the full execution of this Agreement, the Parties shall submit a joint motion seeking the Court's approval of this Agreement and the dismissal of the Complaint with prejudice.

      **3.**      **Settlement Amount for General Release and Limited Confidentiality.**  As consideration for Armstead's general release of claims against the Company in Section 6 of this Agreement, the Company will pay Armstead the gross sum of $500 (the "General Release Settlement Amount").  No withholdings will be made from this payment, and this amount will be reported on a Form 1099 issued to Armstead.

The consideration set forth above is in full and complete settlement of Armstead's general release of claims against the Company and confidentiality terms.  The General Release Settlement Amount shall be due and payable to the Vaughn Law Firm in accordance with the payment schedule set forth in Section 4 of this Agreement.

      **4. Payment Schedule.**  The FLSA Settlement Amount and the General Release Settlement Amount will be paid as follows:

      **a.**  Within five (5) days of the Court's approval of the joint motion for approval of settlement agreement but in no case will the first payments become late prior to January 6, 2017, the Company will make payment in the amount of $390 for a portion of the sum set forth in Section 3 and $696.62 for a portion of the sum set forth in Section 1(c);

      **b.**  Within thirty (30) days of the Court's approval of the joint motion for approval of settlement agreement, the Company will make payment in the amount $655 in the gross amount for a portion of the sum set forth in Section 1(a), $125 for a portion of the sums set forth in Section 3 and Section 1(b), and $393.25 for a portion of the sum set forth in Section 1(c);

    **c.** Within sixty (60) days of the Court's approval of the joint motion for approval of settlement agreement, the Company will make payment in the amount $390 for a portion of the sum set forth in Section 1(b) and $696.62 for the portion of the sum set forth in Section 1(c);

    **d.** Within ninety (90) days of the Court's approval of the joint motion for approval of settlement agreement, the Company will make payment in the amount $390 for a portion of the sum set forth in Section 1(b) and $696.62 for the portion of the sum set forth in Section 1(c);

    **e.** Within one hundred twenty (120) days of the Court's approval of the joint motion for approval of settlement agreement, the Company will make payment in the amount $390 for a portion of the sum set forth in Section 1(b) and $696.62 for the portion of the sum set forth in Section 1(c); and

    **f.** Within one hundred fifty (150) days of the Court's approval of the joint motion for approval of settlement agreement, the Company will make payment in the amount $655 in the gross amount for a portion of the sum set forth in Section 1(a), $125 for a portion of the sums set forth in Section 1(b), and $393.25 for a portion of the sum set forth in Section 1(c).

    **5.**    **Tax Liability.** In paying the amount specified in Section 1 or Section 3, Company make no representation regarding the tax consequences or liability arising from said payments. Armstead understands and agrees that any and all tax liability that may be due or become due because of the payments referenced above is her sole responsibility, and that she will pay any such taxes that may be due or become due. Armstead agrees to bear all tax consequences, if any, attendant upon the payment to her of the FLSA Settlement Amount and the General Release Settlement Amount. Armstead further agrees to hold Company harmless from and against all valid tax or tax withholding claims, amounts, interest, penalties, fines or assessments finally determined to be valid by any taxing authority or governmental agency with regard to the FLSA Settlement Amount and the General Release Settlement Amount. In the event Company receive written notice that any claim or assessments for taxes, withholding obligations, penalties and/or interest arising out of this settlement are being or will be made against Company, Company shall promptly, after receipt of such written notice, notify Armstead by letter sent to counsel for Armstead.

    **6.**    **General Release by Armstead.** Except for any claim related to the non-payment of payroll taxes by the Company, in consideration of the General Release Settlement Amount described in Section 3 of this Agreement, Armstead (for herself, her agents, assigns, heirs, executors, and administrators) releases and discharges the Company (including its officers, principals, members, employees, agents, representatives, attorneys, or officers) from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, and expenses (including attorney fees and costs actually incurred), of any nature whatsoever, known or unknown, in law or equity which arose at any time from the beginning of time to the date Armstead executes this Agreement. Without limiting the foregoing general release, Armstead understands that this general release applies, but is not limited, to: all claims arising out of Armstead's employment relationship with the Company, the cessation of that employment, the compensation or benefits

payable in connection with that employment or the cessation of that employment and/or any other interaction with Company, including, without limitation, (a) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), et seq.; (b) The Americans With Disabilities Act of 1990, as amended, 42 U.S.C. § 12101et seq.; (c) The Equal Pay Act, as amended, 29 U.S.C. § 206, et seq; (d) The Lilly Ledbetter Fair Pay Act of 2009; (e) The Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601, et seq.; (f) The National Labor Relations Act, 29 U.S.C. § 151, et seq.; (g) The Employee Retirement Income Security Act, as amended, 29 U.S.C. § 1001 et seq.; (h) The Fair Credit Reporting Act, as amended, 15 U.S.C. § 1681 et seq.; (i) The Civil Rights Act of 1866, 42 U.S.C. § 1981 et seq.; (j) The Fair Labor Standards Act, as amended, 29 U.S.C. § 201, et seq. (the "FLSA"); (k) The Occupational Safety and Health Act, as amended, 29 U.S.C. § 651, et seq. (l) any agreement, representation, promise, understanding, policy, practice, plan, or potential entitlement (regardless of the source); (m) past or future wages, severance, compensation, vacation pay, holiday pay, meal or rest breaks, overtime, benefits, bonuses, commissions, fringe benefits, reimbursement of expenses, or other forms of consideration, payment, or remuneration, except for claims to enforce payment of those sums explicitly identified in Section 3; (n) breach of contract; (o) intentional and/or negligent infliction of emotional distress; and (p) any other federal, state, or local law, whether arising or emanating from statute, executive order, regulation, code, common law, or other source, including, but not limited to, all actions sounding in tort, contract, and/or any doctrine of good faith and fair dealing.

Armstead further waives any and all rights to participate in a class or collective action alleging violations of any of the above laws, including those brought under the FLSA, and Armstead further covenants and agrees not to accept, recover or receive any back pay, front pay, liquidated damages, other damages or any form of relief based upon any claims that have been asserted or could have been asserted or settled in a lawsuit that may arise out of, or in connection with, any other individual, class or administrative remedies pursued by any state or local governmental agency against Company.  Finally, the above release excludes any other claim which cannot be released by private agreement.

This Agreement shall not apply to any provision of this Agreement that may be interpreted to waive, release, or extinguish any rights that, by express and unequivocal terms of law, may not under any circumstances be waived, released, or extinguished.

**7. General Release by Company.**  In consideration of the releases, promises and covenants provided for herein, the Company (for itself, its agents, assigns, successors, heirs, executors, and administrators) releases and discharges Armstead from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, and expenses (including attorney fees and costs actually incurred), of any nature whatsoever, known or unknown, in law or equity which arose at any time from the beginning of time to the date Armstead executes this Agreement, including but not limited those growing out of, resulting from, or connected in any way to Armstead's relationship and/or employment, and the termination thereof, with Company.  Without limiting the foregoing general release, this includes, but is not limited to, all claims based on constitutional, statutory, common law, or regulatory grounds, including but not limited to conversion, intentional infliction of emotional distress, negligence, breach of contract or implied covenant, deprivation of equity interest, shareholder rights, conversion, defamation, retaliation, fraud, misrepresentation, or promissory estoppel.  This includes all claims for any relief, no matter

how denominated, including, but not limited to compensatory damages, punitive damages, and attorneys' fees and costs.

**8. Non-disparagement.**  Each Party agrees not to make any oral or written statements or reveal any information to any person, about the other Party which disparages or damages the the other Party's reputation or business.  The Company agrees that if asked for a reference by any prospective employer and/or current employer of Armstead, the Company will respond by only providing the dates of employment, last position held and rate of compensation.

**9**. **Representations, Warranties and Affirmations.**  Armstead represents, warrants and affirms that she has no suits, claims, charges, complaints or demands of any kind whatsoever currently pending against Company with any local, state, or federal court or any governmental, administrative, investigative, civil rights or other agency or board.  Armstead represents, affirms and warrants that she has not filed any charge, complaint or action against Company with OSHA, the EEOC, the NLRB or any other Federal, State or local agency or board.  This representation, affirmation, and warranty is a material inducement for Company to enter into this Agreement.  In addition to all other rights and remedies Company may have at law or in equity, if Armstead's representation, affirmation, and warranty is false, Armstead will return to Company all consideration paid pursuant to Section 3 of this Agreement.  Armstead further represents and affirms as a material term of this Agreement that she has been paid and/or received all leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits to which she may be entitled and that no other leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits are due to her, except as provided for in this Agreement.

**10.    Disclaimer of Liability.**  Nothing in this Agreement shall constitute or be construed as an admission of liability or wrongdoing by the either Party.  Each Party expressly denies that it has done anything wrong or unlawful.

**11.    Remedies for Breach.**  Should any Party prevail in any action brought against the other to enforce the terms of this Agreement, or to recover damages for breach of this Agreement, or to collect the FLSA Settlement Amount or the General Release Settlement Amount to be paid by Company under this Agreement, the prevailing Party shall be entitled to recover from the other her or its reasonable attorneys' fees incurred in the action, along with costs and damages.

**12.    Integration**.  This written Agreement contains the entire agreement of the parties regarding the settlement of Armstead's claims under the FLSA and the Parties' general release of claims.  This Agreement may not be changed orally but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification, extension, or discharge is sought.  The Parties acknowledge that each Party has not relied upon any representations or promises except as set forth herein and has not relied upon the other Party or its counsel for any advice on or interpretation of the legal or tax implications of this Agreement.  By signing below, the Parties acknowledge receipt of a copy of this Agreement.  Each Party has been advised to seek the advice of a Certified Public Accountant or other tax advisor to insure and review the Agreement and to advise each Party concerning how all of the terms and conditions set forth therein may affect their future tax liabilities.  The Parties hereto hereby acknowledge and agree that each has had the opportunity to retain its, his or her own Certified Public Accountants, tax advisor or tax attorney with reference to the tax implications of this Agreement.  Further, the Parties hereby acknowledge

that they have not relied upon the tax implications of this Agreement.  Further, the Parties acknowledge and agree that their signatures to this Agreement serve as the acknowledgment that they have read this particular paragraph and that they have had the opportunity to seek independent advice.  All Parties acknowledge that its, his or her attorney provided them no tax advice and they have not relied on any representations of their lawyer in providing tax advice.

**13.    Severability.**  Should any clause of this Agreement be found void by a court of law, with the exception of the requirement that the Company pay Armstead and her counsel the Settlement Amount set forth in Section 1 and the General Release Settlement Amount set forth in Section 3, that fact shall not impair the remainder of this Agreement.

**14.    Governing Law.**  This Agreement shall be interpreted and enforced in accordance with the laws of the State of Georgia.  The parties agree to and hereby do submit to jurisdiction before any state or federal court of record in Fulton County, Georgia, subject to the right, if any, of either party to attempt to remove any claim arising under this Agreement to a United States District Court if said Court has jurisdiction.

**15.    Construction of Agreement.**  The Parties hereby confirm and agree that this Agreement is the result of negotiation and compromise and that in interpreting this Agreement neither party shall be considered to be the drafter of the document, and that the language should not be strictly construed against either party.  Instead, the language of the Agreement should be interpreted in a manner consistent with the ordinary and reasonable meaning of the words used.

**16.    Binding Effect.**  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, executors, administrators, officers, directors, shareholders, employees, agents, parent companies, subsidiaries, divisions, affiliates, related companies, successors, and assigns.

**17.    Expenses.**  The Parties shall pay their own expenses, including, without limitation, any attorney fees, mediation fees, court costs, pleading preparation, legal and expert fees, or other expenses incurred for the negotiation, preparation, and execution of this Agreement, with the exception of the payment of the FLSA Settlement Amount and the General Release Settlement Amount by the Company to Armstead and her counsel referenced in Paragraphs 1.

**18.    Counterparts.**  This Agreement may be executed in identical counterparts, each of which shall constitute an original of this Agreement. Signatures of the Parties may be exchanged by facsimile or electronically (e.g. Pdf) and same shall be treated as an original.

**19.    Understanding and Voluntariness.** EACH PARTY REPRESENTS AND AGREES THAT THE PARTY HAS DISCUSSED ALL ASPECTS OF THIS AGREEMENT WITH THE PARTY'S COUNSEL, THE PARTY HAS CAREFULLY READ AND FULLY UNDERSTANDS ALL OF THE PROVISIONS OF THIS AGREEMENT, AND THAT THE PARTY IS VOLUNTARILY ENTERING INTO THIS AGREEMENT.

12/19/2016 13:00 FAX 4042551457          MAILUSA                              ☒001
19-DEC-2016 11:34   From:4043781295                                    Page:8/14

**IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement to be executed by their duly authorized representatives, and have executed and delivered this Agreement, as an agreement under seal, effective as of the date first written below ("Effective Date").

Stephanie Armstead

_Stephanie Armstead_
Signature

Dated: 12-19-16

Haven Developmental Care, Inc.

_Carol Trim-Bagot_
Signature

By: _____

Title: Director

Dated: 12/23/16

Carol Trim Bagot

_Carol Trim-Bagot_
Signature

Dated: 12/23/16

19-DEC-2016 12:17   From:4042551457        ID:The Vaughn Law Firm   Page:001   R=95%